The judgment is therefore affirmed with ten per cent. damages. All the judges concur.

---

THE ST. LOUIS GAS LIGHT COMPANY, Appellant, v.
THE AMERICAN FIRE INSURANCE COMPANY OF
PHILADELPHIA, Respondent.

St. Louis Court of Appeals, January 2, 1889.

1. **Practice, Appellate**: WEIGHT OF EVIDENCE. Where the burden of proof is on the plaintiff and the finding is for the defendant, the verdict cannot be disturbed on appeal, as being against the weight of evidence, unless the conclusion is irresistible that the verdict is the result of prejudice, bias or mistake, and that to let it stand would involve an obvious miscarriage of justice.

2. **Judicial Notice**: SCIENTIFIC FACTS. Courts are bound to take judicial notice of scientific facts which universal experience has rendered axiomatic, but cannot take such notice of scientific facts concerning which men eminent in the particular branch of learning widely differ.

The St. Louis Gaslight Co. v. Amer. Fire Ins. Co.

3. **Insurance:** EVIDENCE: OPINIONS OF WITNESSES. The plaintiff held an insurance policy issued by the defendant, for indemnification against loss or damage to articles and buildings, including a gasholder, that might happen by fire, explosion, or fire resulting from explosion, and providing that if said building should fall, except as the result of fire, all insurance under said policy upon the same or its contents should immediately cease and determine. It was contended for the plaintiff that the destruction of the gasholder was caused by fire or explosion, or both, and for the defendant that it resulted from the falling of the structure, and from causes other than fire or explosion. The witnesses on either side testified to facts and expert opinions in support of their respective theories. *Held :* It was proper to instruct the jury, at the plaintiff's instance, that they were not bound to adopt the opinion of any witness; but it was for them to determine, in the light of all the circumstances before them, what weight should be given to any opinion, theory or conclusion stated by any witness, and the plaintiff was in no position to complain if the jury, in pursuance of the instruction, rejected the theory advanced for the plaintiff.

4. **Evidence:** TESTIMONY OF EXPERT. A witness cannot be permitted, under color of giving testimony as an expert, to contradict or impeach the credibility of facts sworn to by an eye-witness. He may only, as an expert, give his opinion touching the effect of facts proved or agreed upon, or hypothetically stated in conformity with the evidence in the case. But this does not exclude an expert opinion upon conflicting inferences or deductions drawn by other witnesses from facts in evidence.

5. **Evidence:** MEANING OF WORDS. While evidence is not admissible to explain or define the ordinary meaning of words in common use, the rule is not violated when a witness is permitted to say whether certain described phenomena were indicative of an "explosion ;" the word being used in its ordinary sense.

6. **Evidence:** FACT AND OPINION. When the statement of a witness is admitted by the court on the express ground that it is taken to be the statement of a fact, and not the expression of an opinion, this is a sufficient caution to the jury that as an expression of opinion it would be inadmissible.

7. **Evidence:** MATERIALITY : IMPEACHING WITNESS. When a witness on cross-examination is asked any question on a matter immaterial to the issues on trial, his answer is conclusive, and cannot be contradicted with a view of impeaching him. But if the matter be material, he may be contradicted by other testimony.

8. **Evidence :** FACTS IN ANOTHER CASE. A witness cannot be permitted to state in detail the facts of another case with which he is familiar, because its circumstances are more or less parallel with those of the case on trial.

9. **Instructions :** CONSTRUING POLICY. It is the duty of the court, and not of the jury, to construe the terms of the policy sued on, and an instruction that the jury were to take the words used in their plain, ordinary and popular sense, was properly refused.

10. **Instructions, Misleading :** VERDICT FOR RIGHT PARTY. Where it was essential to the plaintiff's case to prove that the gasholder was destroyed or damaged by fire or explosion, or both, and there was no evidence that after the entire structure fell into ruins, any injury was caused to it by any of such agencies, instructions based upon various hypotheses supposing a destruction by fire or explosion, declaring that the gasholder was not a building within the meaning of the policy, and yet leaving it to the jury to determine whether it was or was not such a building, were properly refused, as calculated to mislead the jury ; and there is no ground, either in such refusal, or in the facts shown in evidence, to justify a disturbance of the verdict and judgment.

*Appeal from the St. Louis City Circuit Court.*—HON. LEROY B. VALLIANT, Judge.

AFFIRMED.

*Hitchcock, Madill & Finkelnburg,* for appellant.

The circuit court erred : (1) In not setting aside the verdict, as against the weight of evidence. Plaintiff's testimony as to the circumstances and cause of the destruction of the gasholder was clear, consistent, unimpeached, and sufficient not only to make out its case, but to exclude any reasonable hypothesis to the contrary. Defendant's eye-witnesses confirmed plaintiff's proof as to what occurred, so far as observed by them ; its expert witnesses wholly ignored most material facts, proved without contradiction, and so far as they presented or suggested any theory of the disaster, it was contradicted by defendant's own proof. Under such circumstances

the verdict of the jury was the result of a manifest mistake, and it is the duty of the appellate court to set it aside. *Lionberger v. Pohlman,* 16 Mo. App. 392, 398 ; *Bank v. Overall,* 16 Mo. App. 514 ; *Taylor v. Fox,* 16 Mo. App. 527 ; *Borgraefe v. Knights of Honor,* 22 Mo. App. 148. ( 2 ) In admitting the witness Potter's testimony as to the meaning of the word explosion. Evidence is not admissible to define or explain words used in a contract unless such words are obscure or ambiguous, or used therein in some special sense, or their meaning controlled by some special usage. 1 Greenl. Ev. secs. 277-81 ; *Reid v. Ins. Co.,* 58 Mo. 424-5 ; *Koehring v. Muemminghoff,* 61 Mo. 407 ; *State v. Donnelly,* 9 Mo. App. 520, 526 ; *Fruin v. Railroad,* 89 Mo. 404 ; 2 Whart. Ev., sec. 972. ( 3 ) In admitting incompetent testimony intended to contradict plaintiff's witness Lansden. When a witness is cross-examined on a matter collateral to the issue, he cannot, as to his answer, be subsequently contradicted by the party putting the question. The test of whether a fact inquired of in cross-examination is collateral is this, — would the cross-examining party be entitled to prove it as a part of his case tending to establish his plea ? 1 Whart Ev., sec. 559 ( cas. cit. note 3 ) ; 1 Green. Ev., sec. 449 ; *Holmes v. Anderson,* 18 Barb. 420 ; *Lohart v. Buchanan,* 50 Mo. 201 ; *Bank v. Murdock,* 62 Mo. 74-5. ( 4 ) In admitting testimony by expert witnesses for defendant, which was incompetent, because the witness was permitted : ( *a* ) To say what produced a certain effect observed by him in the wreck, though other testimony of the same kind was excluded. ( *b* ) To state, in effect, under color of an expert opinion, that certain phenomena testified to for plaintiff by an eye-witness, could not have occurred. ( *c* ) To answer hypothetical questions which assumed material facts not in evidence. ( *d* ) To answer hypothetical questions based upon an incomplete and inaccurate statement of facts in evidence. ( *e* ) To give an

opinion, prejudicial to plaintiff's case, on a matter not in issue. The function of experts is to give their opinions or judgments as to conclusions from facts within the range of their specialties, but too recondite to be properly comprehended and weighed by ordinary reasoners. But where scientific men are called as witnesses they cannot give their opinions as to the general merits of the cause, but only their opinions upon the facts proved. If there is no dispute as to the facts, the opinion of such witness may be asked directly ; if the facts remain to be found by the jury, they must be hypothetically stated to the expert, but such hypothesis must conform to the evidence in the case.; and it is not competent for an expert to pass on the credibility of evidence submitted to the jury, nor to give an opinion upon assumed facts not in evidence. 1 Whart. Ev. secs. 440, 452 ; 1 Greenl. Ev. sec. 440 ; *Muldowney v. Railroad*, 37 Iowa, 615 ; *Tingle v. Cowgill*, 48 Mo. 291, 298 ; *Hovey v. Chase*, 52 Maine, 304 ; *Thayer v. Davis*, 38 Vt. 163 ; *Sills v. Brown*, 9 Carr. & P. 601. (5) In excluding competent expert testimony offered for plaintiff. An expert's reasons for his opinion are competent ; the value of his judgment often depends on the reasons for it. 1 Whart. Ev. sec. 453 ; *Keith v. Lothrop*, 10 Cush. 457 ; *Commonwealth v. Webster*, 5 Cush. 301.; *Collier v. Simpson*, 5 Carr. & P. 73. (6) In refusing instructions asked by plaintiff, to the effect, respectively, (*a*) that the words of the policy are to be taken in their ordinary sense. (*b*) That the gasholder in question was not a building within the meaning of the policy. (*c*) Or, if the question whether the gasholder was a building was a question of fact for the jury, then in refusing to submit such question to the jury. (*d*) That if the said gasholder was damaged in consequence either of the burning or of the explosion of the gas, or both, then a loss occurred under the policy even though said gasholder was not visibly burned. A litigant has the right to instructions placing

before the jury in plain and direct terms every legal phase of his case which is justified by the evidence. *Maupin v. Lead Co.*, 78 Mo. 27 ; *Cahn v. Reid*, 18 Mo. App. 115 ; *Livingston v. Ins. Co.*, 7 Cranch, 244. Expert testimony was erroneously admitted for defendant, to the effect that on the evidence before them there was no explosion ; also, testimony that the gasholder did not appear to have been burned ; in view of which plaintiff's instructions three and nine, respectively, should have been given. A sheet-iron gasholder is not a building in the common acceptation of that word ; this policy itself, in terms, distinguished between the "building" and the "gasholder" insured thereby. It was the duty of the court to so instruct the jury. *State v. Donnelly*, 9 Mo. App. 526 ; *Fruin v. Railroad*, 89 Mo. 404-5 ; *Weil v. Schwartz*, 21 Mo. App. 372. Or, if the meaning of the word " building," as used in the policy, was doubtful or ambiguous, it should have been left to the jury, and plaintiff's instructions 6a and 6b should have been given, having been asked in view of that alternative. *Edwards v. Smith*, 63 Mo. 127 ; *Weil v. Schwartz*, 21 Mo. App. 381. (7) In instructing the jury (defendant's number seven), in effect, that the gasholder was a building, and within the provisions of the policy concerning the fall of a building.

*Noble & Orrick* and *Given Campbell*, for the respondent.

The weight of the testimony was strongly in favor of the respondent and the jury found rightly on the facts. But even if there were a doubt about this, the court will not weigh the testimony. *Hipsley v. Railroad*, 88 Mo. 353 ; *Walker v. Owens*, 25 Mo. App. 587–595 ; *Manion & Co. v. Carreras*, 26 Mo. 229 ; *Rothschild v. Railroad*, 92 Mo. 91. There was no error

as to the question to and answer by Professor Potter:
"Q. In speaking of the ignition of the gas, the quan-
tities and under the circumstances mentioned, is there,
in the ordinary acceptation of the word, an explosion of
gas? A. There is not." Professor Potter was an
expert, well acquainted with the nature of gases,
including carbo-hydrogen gas, and he was questioned
as above concerning this gas under the circumstances
mentioned. He, an expert, stated as a fact that, under
the circumstances mentioned, there would be no explo-
sion. This was not to define or to explain that word in
the contract, and we do not deem it necessary to con-
trovert either the general proposition of law or the
authorities set forth on this point in the appellant's
brief. We agree that the word was used in its ordinary
meaning, and that the construction of the policy was
with the court solely. It is to be remembered, in con-
sidering all appellant's objections to expert testimony,
that the court, at the request of the appellant, instructed
the jury that the jury were not bound to adopt the
opinion of any witness, and it was for the jury to deter-
mine what weight, if any, they would give to any
opinion, theory or conclusion stated by any witness.
*Forsythe v. Doolittle*, 120 U. S. 76–77; *State v. Baber*,
74 Mo. 297. The authorities cited by appellant are not
to any degree opposed to the method of examination
pursued. The questions were based upon and in
accordance with the facts in evidence, and the objec-
tions of the appellant are hypercritical. *Spear v.
Richardson*, 37 N. H. 24. The authorities do not
require the whole case put into the questions in each
instance, nor at all, save when the witness is allowed to
give an opinion embracing all the facts. This was not
allowed in the present case. *Harnett v. Garvey*, 66 N.
Y. 641; *Williams v. State*, 64 Maryland, 384. The
testimony of Prof. Potter was properly admitted. As
to hypothetical questions put, either that they assumed

material facts not in evidence or were incomplete and inaccurate statements of facts in evidence. If the evidence tends to prove the facts supposed it is sufficient. *Spear v. Richardson*, 37 N. H. 24. Also, if within possible or probable range of the evidence. *Harnett v. Garvey*, 66 N. Y. 641. Prof. Johnson was testifying as an expert civil engineer, and acquainted with the nature of the gas spoken of. It is apparent, we submit, that it was competent for the defendant to show that the ignition of the gas escaping above the holder produced no different results as to its escaping than if it had escaped without ignition. The expert gave as his opinion that there would be no difference as to escaping, which was, of course, only one factor in the case; but a pertinent fact, tending to prove that the failure was not attributable to the ignition of the gas. The particular testimony of Keenan, and of White, was properly excluded, in each instance. The testimony was incompetent and clearly irrelevant. The first question was, whether the witness had ever known of a case where a suspension frame was broken down by mechanical means alone, in the absence of combustion of gas. He answered that he knew of one instance where a gasholder was destroyed without injury to the suspension frame, and he is then asked whether or not it was accompanied with inflammation or combustion of the gas outside, over or above the holder. The testimony was incompetent, as the facts were not sufficient to show either that any one could become an expert by such an observation, so as to give an opinion in every other case where there was a failure of a gasholder, and it was irrelevant as it in no wise tended to show whether the failure of the gasholder of the plaintiff was caused one way or another. It was an effort to bring into this case an inquiry as to the failure of another gasholder, the cause of which could be properly determined only by an investigation of all the facts relating to that. It is apparent that

such statements, whether admitted or excluded, could not affect the case in hand, or tend to elucidate the question to be solved, unless the conditions of the two cases were the same, and whether they were or not was not attempted to be proven. Nor was it possible to legally make the inquiry in this case. There was no error in refusing to instruct the jury that the words of the policy were to be taken in their ordinary sense. There was no pretense by any one but that the words were to be so taken, nor any testimony introduced to show otherwise. The question to Prof. Potter expressly referred to the ordinary sense of the word. The rule invoked is a rule of construction and the construction of the policy belonged exclusively to the court. 1 Greenl. Ev. secs. 277–281 ; Thompson on "Charging the Jury," sec. 12 and cases cited ; *State to use v. Lefaivre*, 53 Mo. 470 ; *Edwards v. Smith*, 63 Mo. 119–127 ; *State to use v. Donnelly*, 9 Mo. App. 519–526 ; *Koehring v. Muemminghoff*, 61 Mo. 407. There was no error in refusing to instruct that the gasholder was not a building within the meaning of the policy in the language of instruction number six. The instruction would have presented a false issue. The gasholder was a building within the letter and spirit of the policy. *Nave v. Ins. Co.*, 37 Mo. 371 ; Flanders on Fire Ins. 551 ; Wood on Fire Ins. 114, and cases cited. Nor was there error in refusing the instructions 6a and 6b. 6a was erroneous in attempting to put it to the jury whether the gasholder was a building within the meaning of the policy ; and because it attempted to put a false issue, that the fall of a part of the gasholder would not relieve defendant from liability as to damage to remainder by fire or explosion. *Railroad v. Conlon*, 92 Mo. 221 ; *Waddingham v. Hulitt*, 92 Mo. 528 ; *Vanhooser v. Berghoff*, 90 Mo. 487. 6b was erroneous inasmuch as it attempted to put before the jury as an issue that which was not such. It was not claimed in the answer nor during the

trial that a fall of a part of the building would exempt the defendant for loss by either fire or explosion. The instruction was misleading. It was fully supplied by the other instructions given. Nor was there error in refusing the ninth instruction asked by plaintiff to the effect that, if the gasholder was damaged in consequence either of the burning or of the explosion of the gas or both, then the loss occurred under its policy, even though said gasholder was not visibly burned, etc. The instructions given declared the whole law applicable to the case and were essentially the same as this instruction. *Miller v. Railroad*, 90 Mo. 389 ; *State v. Jump*, 90 Mo. 171. The instruction was involved, confused and misleading. *Talbert v. Mearnes*, 21 Mo. 427–431. It attempted to instruct the jury on the effect to be given to particular facts in evidence, commenting thereon. *Anderson v. Kincheloe*, 30 Mo. 520 ; *Jones v. Jones*, 57 Mo. 138 ; *Forrester v. Moore*, 77 Mo. 651–659 ; Thompson Charging the Jury, sec. 44 ; *Adams v. Roberts*, 2 Howard (U. S.) 486 ; *Reese v. Beck*, 24 Ala. 651–662. The question, whether the gasholder was a building or not, was not necessarily involved in this case. The word building was not used in any instruction given ; the law applicable was the same whether it was a building or not. But the court could have properly instructed that the gasholder was a building within the meaning of the policy. *Nave v. Ins. Co.*, 37 Mo. 371. The judgment was for the right party.

ROMBAUER, P. J., delivered the opinion of the court.

This is an action on a policy of insurance, brought to recover the sum of $1,112.37 ; being the defendant's proportion, as alleged, of the loss sustained by plaintiff, by the destruction, on December 11, 1884, by an explosion and fire, of an iron telescopic gasholder, which was insured in the total sum of sixty thousand dollars, in

forty different policies, of which the policy sued on was one.

The petition averred in substance : That defendant, by its policy No. 90,226, dated June 12, 1884, in consideration of seventy-five dollars, paid by plaintiff, insured plaintiff "against loss or damage occasioned by fire, by explosion, or by fire resulting from explosion, to the amount of five thousand dollars, on several buildings, improvements, gasholders and other articles of property and machinery belonging to plaintiff and situated in the city of St. Louis, which property, together with the amount of insurance agreed to be placed upon each of the several items thereof, is in said policy set out and described as follows."

Of the several items so insured in said policy that one in respect of which said loss by plaintiff is alleged is thus described therein :

"No. 20. $1,500. On one iron telescopic gasholder, situated in city block 447, being one hundred and thirty-eight feet in diameter and seventy-five feet high."

The petition further alleges, that said contract of insurance was for one year beginning June 15, 1884 ; that by said policy (filed with the petition), defendant promised to make good to plaintiff all such loss or damage to said several pieces and articles of property or either of them as should happen by fire, explosion, or by fire resulting from explosion, during said term of one year, not exceeding in amount the sum insured, and to be payable sixty days after notice and proof of loss made by plaintiff in accordance with the terms of said policy.

That on December 11, 1884, said iron telescopic gasholder, being item No. 20 above mentioned, was totally destroyed by an explosion and fire, which explosion and fire did not arise from any of the excepted causes mentioned in said policy.

The petition then contains averments as to giving the preliminary proofs of loss, and as to other insurance

on the property, which it is needless to set out, as no question touching them arises on this appeal.

The defendant's answer in substance admits the execution of the policy sued on and the contract of insurance as alleged ; denies that on December 11, 1884, or at any other time, the one iron telescopic gasholder described as item No. 20 in the petition and policy was destroyed by an explosion and fire as in said petition alleged, or by either explosion or fire ; and avers that at the time and place mentioned in the petition, or by it intended, the only destruction or injury happening to said gasholder was caused by the falling of its standards, and the other parts of said holder, and not by either fire or explosion as in said petition pretended. A further defense is set up by said answer : " And further answering in this behalf this defendant says that item No. 20 of the property in the petition mentioned and therein described as an iron telescopic gasholder, situated in city block 447, being one hundred and thirty-eight feet in diameter and seventy-four feet high, was, at the time of the execution of said policy by defendant, and pending said contract, and up to the time of said pretended destruction thereof, a building within the meaning of said policy, upon said block ; and that among the conditions with reference to which said policy was made and accepted and in it contained, it was expressly provided that if said building should fall, except as the result of fire, all insurance under said policy by said company, here defendant, on it or its contents should immediately cease and determine. And defendant says said building did, before the pretended loss or damage complained of in and by said petition, fall, and said fall was not the result of a fire ; and that thereupon immediately said insurance by this defendant on said gasholder and item No. 20 did cease and determine."

The plaintiff's reply was a general denial of all new matter contained in the answer.

Upon the issues so framed the cause was tried in

the circuit court before a jury which rendered a verdict for the defendant.

The plaintiff appealing contends that the trial court erred in the following particulars : ( 1 ) In not setting the verdict aside, as against the weight of evidence ; (2) in admitting the testimony of witness Potter, as to the meaning of the word explosion ; ( 3 ) in admitting incompetent testimony intended to contradict plaintiff's witness Lansden ; ( 4 ) in admitting experts to testify as to facts not within the legitimate range of expert testimony ; ( 5 ) in excluding competent expert testimony offered by the plaintiff ; ( 6 ) in refusing legal instructions asked by the plaintiff ; ( 7 ) in instructing the jury in effect that the gasholder was a building.

As all of the propositions involved in the above assignment were presented and argued very exhaustively by counsel on both sides, orally as well as in their printed arguments, we have been materially aided in their careful examination and will state our conclusion on each.

I.   When the action is at common law or statutory, and triable by jury, the mere weight of evidence is a question exclusively for the trial court, and its action in granting or refusing a new trial on that ground alone is not subject to review on appeal.   Such has always been the rule governing appellate procedure in this state.   Formerly appellate courts refused to interfere if there was any evidence whatever supporting the verdict, but under the latter and more rational rule the holding is limited to cases wherein there is no substantial evidence in its support.   This, however, in its very nature applies to cases only where there is no substantial evidence in support of an issue, in favor of the party who sustains the burden of proof.   Where, as in this case, the burden of proof is on the plaintiff, and the finding is in favor of the defendant, the verdict cannot be vacated by the appellate court on the ground that it is against the weight of evidence unless all the evidence in the

case leads irresistibly to the conclusion that the verdict is the result of prejudice, bias or mistake, and to let the verdict stand would involve an obvious miscarriage of justice. This is substantially the view expressed by this court in *Lionberger v. Pohlman*, 16 Mo. App. 398; *Friesz v. Fallon*, 24 Mo. App. 442, and by the supreme court in *Price v. Evans*, 49 Mo. 396, and *Spohn v. Railroad*, 87 Mo. 74, 84. This being the law, we shall proceed to apply it to the facts disclosed by the evidence for the purpose of determining whether the verdict of the jury is so opposed to the evidence and all probabilities arising therefrom as to be the obvious result of partiality, prejudice or mistake.

The structure destroyed was a telescopic gasholder one hundred and thirty-eight feet six inches in its smaller diameter, and seventy feet high on the outer edge, composed of an upper and lower section constructed of sheet-iron riveted together. The lower section was a cylinder, open at the top and bottom, thirty-five feet high and one hundred and forty feet in diameter, its upper rim being turned down inward all around, so as to form an inverted cup. This cup was caught by a corresponding cup of the upper section, whenever the upper section was raised to its full height by the buoyancy of the gas pouring into the holder. The upper section was a similar cylinder one hundred and thirty-eight feet six inches in diameter and thirty-five feet high from its lower edge to its upper rim. It was open at the bottom but covered by a sheet-iron crown on top, which had a uniform rise of eight feet from rim to center. The lower section when void of sufficient gas descended and was seated upon a circular row of piers around the bottom of a stone tank sunk into the ground and filled with water. The upper section when void of sufficient gas also rested on these stone piers, but its crown was likewise supported by a wrought-iron vertical king post resting on a stone pier built in the center of the tank.

On the circumference of the tank stood twelve hollow cast-iron piers or standards about seventy-five feet high and about thirty-six feet apart, one from the other, connected on top by iron girders ˙ bolted to each other, and to the tops of the columns constituting what is called the suspension frame.  At the inside of the top of each of these columns was one guide-wheel, and over, the center of each was another.  Over these wheels, chains were suspended, one end of which was fastened to the upper edge of the lower cylinder and the other to a counter-weight of solid iron weighing about two tons each and moving up and down in these hollow columns with the sinking and rising of the lower cylinder.

The˙ ordinary office of this suspension frame was two-fold, to guide the cylinders encircling the gas in their upward and downward descent, so as to ensure their perpendicular motion, and to protect their perpendicular motion and position from being disturbed by the action of storms and snows pressing on one side.  The ordinary office of the counter-weights was to relieve any excessive pressure on the gas within the holder after the cylinders had risen to a certain height.  The weight of the upper cylinder was about one hundred and forty-two tons, and as the counter-weights did not neutralize any of the weight which was supported by the buoyancy of the gas alone, a sudden exhaustion of the gas from the cylinder would result in its rapid descent if perpendicular, and if canted with the strain resting on certain columns or sections of the polygon, in a sudden increase of the strain on that particular point.

On the night of December 11, 1884, the holder was observed to be working in good order, as late as half-past nine o'clock in the evening.  The inlet pipe to the holder had been closed at six o'clock, the top of the holder then being forty-three feet above the water-line. Shortly before ten o'clock one of plaintiff's employes, while in the boiler-house on the premises, heard in rapid

succession two sounds resembling those made by the slamming of a door. In going out to ascertain the cause he found that one of the columns or standards was broken and in a bent position and that the upper cylinder had careened from north to south. The wind was blowing at that time from north to south at a speed variously estimated by witnesses at from five to twenty miles per hour. The witness immediately shut off the outlet pipe leading from the holder, and ran to notify the plaintiff's superintendent who was at the main works. Upon returning to the holder in about twenty minutes, he found that the cylinder had careened more, and that another column was broken next to the first. By counting the plate-iron sheets on the holder he ascertained that the upper cylinder was twenty-two feet high on the north side and twelve feet high on the south side above the water-line, the lower cylinder of course resting on the foundation piers. The plaintiff's superintendent, on arriving upon the ground, ordered the men out of the yard and took his position about eighty feet from the holder. Within a few minutes thereafter the two broken columns fell on the holder with the following result, according to the evidence of the witness : "Instantly as they struck the top of the gasholder there was a flame, a bluish flame flashed over the whole holder and the yard almost, it appeared to be. Following that, was the flame shooting up in the air of burning gas and by that light I then saw the columns, remaining columns, and girders fall, crushing in every shape." This witness (Lansden) was the only eye-witness of the occurrence produced at the trial. The important bearing of this testimony on the issue involved is best shown by a brief statement of the respective theories of the plaintiff and defendant touching the cause of the accident.

The plaintiff contends that the falling of the two columns was not the cause of the destruction of the gasholder, but that the holder was destroyed by the ignition

and explosion of gas around and above the holder, the ignition being the result of a spark caused by the concussion of the falling columns with the top of the holder. In support of this theory the following scientific facts are adduced and supported by the testimony of expert witnesses : Hydro-carbon or illuminating coal-gas when unmixed with atmospheric air will neither burn nor explode. The gas becomes explosive when the mixture is five parts atmospheric air to one part of hydro-carbonic gas. When the proportion is nine to one it is most explosive, when it is fourteen to one or greater the gas will not explode. Explosive gas burns with a bluish non-luminous flame, but when the mixture is in such proportion as to burn freely without explosion the flame is yellow and luminous. When the cant of the cylinder first took place the strain caused a buckling of the sheet-iron surface and opened innumerable seams and rivet-holes through which the gas issued and became mixed with atmospheric air, forming a highly explosive mixture. This mixture was ignited by the spark, and the blue light enveloping the holder (as testified to by Lansden) was the result. The explosion thus caused pressing downward, the only direction in which it found resistance, with a terrific force, estimated variously at from four thousand to eight thousand tons, flattened the arch of the upper cylinder and caused its top to spread, so that its edges struck instantaneously the remaining columns of the suspension frame with a blow of great force causing their simultaneous fall ; the downward blow of the explosion tearing at the same time two extensive rends or holes in the top of the upper cylinder, and through these emitting the bulk of the confined gas, which then ignited, burning in a high column with a luminous flame.

In support of this theory the additional facts that the crash preceded the luminous flame, that the witness Lansden and another were forced to the ground by

atmospheric pressure, and that shutters at some distance from the *locus in quo* were forced apparently by pressure, are adduced ; also some other scientific facts negativing the apparent theory of the defense.

The defendant's evidence meets the plaintiff's theory with the following facts sought to be established partly by the testimony of eye-witnesses, and partly by expert testimony : That explosive gas produces great heat, and yet the sheet-iron on top of the holder after the catastrophe bore no evidence of having been subjected to any heat, as even the outer coat of paint remained seemingly uninjured ; that although the top and sides of the holder were inspected by a very large number of witnesses after the catastrophe, not one testified to having seen any of the numerous seams or rivet-holes essential to the proof of the plaintiff's theory ; that a force exerting a downward pressure great enough to have caused the instantaneous destruction of the holder should have exerted some visible effects on objects in the immediate vicinity of the holder, and yet the absence of such effects is shown by positive evidence ; that persons in the immediate vicinity, although not in sight of the holder, noticed the high column of luminous flame shooting up in the air and testified to its preceding the crash of the holder ; that the accumulation of any formidable body of explosive gas on top of the holder with a wind blowing at the rate of twenty miles per hour was highly improbable ; that an escape of a sufficient body of gas to cause such an explosion would have been perceptible to the sense of smell, yet no witness testified distinctly to the smell of gas prior to the fall of the structure ; that a pressure of from four thousand to eight thousand tons would have forced the gas out of the holder almost instantaneously, while plaintiff's own witnesses testify that the gas emitted through the rends in the top of the upper cylinder continued to burn for a period of almost two minutes.

The defendant also contends that the fact that

the witness Lansden was the superintendent of the plaintiff, and morally, if not otherwise, responsible for any accident brought about by his want of care, coupled with the fact that the observations made by him were made during a dark night, and necessarily in a state of excitement in regard both to his own safety and the safety of the structure, is entitled to weight in affecting the reliability of the witness' observations; that the bluish flame claimed to have been noticed by him might have been the bluish appearance of the core of the column of luminous flame, which, owing to its want of contact with atmospheric air, did not burn brightly.

The defendant's evidence further meets the plaintiff's theory by a counter-theory, the nature of which will best appear from the following statement: After the fall of the holder, two extensive rends or holes were visible in the sheet-iron cover of the upper cylinder. These rends, according to plaintiff's theory, were caused by the downward pressure of the exploded gas, and according to defendant's theory by the blow of the two columns which first fell and generated the spark which ignited the gas rushing through these apertures, so that it burnt in a high column of luminous flame. The escape of the gas which was the sole support of the upper cylinder, so far as it was not supported by a strain against some of the columns, probably resulted, according to defendant's theory, in an increase of the strain on those columns and their fall in rapid succession, causing the destruction of the holder.

The defendant's main theory, resting partly on established facts, and partly on expert testimony, may be summarized as follows: That the gasholder was old and in an infirm condition; that many of the bolts and columns were affected by rust; that defects existed in at least two of the columns of the suspension frame in the shape of "cold runs;" that there was a disparity between the thickness of the two sides of a number of

the columns, which were hollow at the top and subject to the action of moisture inside for twenty-seven years ; that with a snow load on top and with a wind blowing twenty miles an hour against the holder, two of the columns on the south side adjacent to each other broke and gave way ; that the fall of these two columns into the tank produced a feebleness in the whole structure, the continuity of the polygon being broken and the integrity of the structure being destroyed ; that at the date of the fall the lower section was seated and the upper section was pressing against its northern side to a considerable degree ; that when the gas contained in the shell was liberated, the whole weight of this structure came down at the point of impingement upon the lower section ; that this gave way suddenly, buckled down and produced a sudden jerk upon a defective column which broke, and the other columns, influenced by the connecting girders and weight of the chains, fell rapidly and almost instantly into the tank and around its edges, resulting in the total destruction of the holder.

We have deemed it unnecessary to set out all the facts bearing on the merits of the respective theories of the plaintiff and defendant. We have stated their substance, because we hold such statement essential to an intelligent discussion of plaintiff's main contention, that the verdict is against the evidence, no less than essential to a full understanding of other errors assigned by the plaintiff.

It must be evident that under the rules governing appellate procedure in this state, we would be warranted to vacate a verdict obtained on such evidence only, if the facts sworn to by plaintiff's eye-witnesses, and the theory built upon such facts by plaintiff's experts, would necessarily exclude any other intelligent cause of the accident than the cause of explosion. In order to do this we would have to hold that Lansden's observations are entitled to absolute credit, and that there is nothing, either in his relations to the plaintiff, or in the surrounding circumstances under which such observations

were made, to cast suspicion upon them. We would, in addition to this, have to hold that the theory of explosion constructed by plaintiff's expert witnesses, on the basis of the facts thus shown, is the only theory scientifically admissible. This we could not do under the facts above stated, even if the plaintiff's theory were opposed by no counter-theory, because the credit due the witnesses is ordinarily a question exclusively for the jury, and while courts may be bound to take judicial notice of scientific facts which universal experience has rendered axiomatic, it would be folly to hold that they can take judicial notice of such scientific facts concerning which men eminent in that particular branch of learning widely differ.

The plaintiff's expert witnesses testify to explosion being the only admissible cause of the accident, upon the facts shown. The defendant's expert witnesses testify with almost equal unanimity, that, from the physical facts surrounding the wreck, the accident must have been due to other causes. Some of them endeavor to explain that in all probability it was due to other causes, and describe in detail the causes which upon the facts observed may have brought it about and probably did bring it about. With the merits of these different theories, we having nothing to do. It is sufficient for us that the jury, by their verdict, have negatived the plaintiff's theory, the proof of which was essential to plaintiff's right of recovery, and that there is nothing in the case which warrants us to hold that such verdict was the result of any other cause than an honest disbelief of the plaintiff's theory on the part of the jury.

It cannot be questioned but that the jury were the sole judges of the merits of the respective theories advanced. The plaintiff's counsel requested the court to charge the jury that "they are not bound to adopt the opinion of any witness who may have testified in the case touching any matter in controversy therein. It is for the jury to determine in the light of

all the circumstances in proof before them what weight, if any, they will give to any opinion or theory, or conclusion stated by any witness." This instruction the court gave, and within the limits hereinbefore referred to it is the unquestioned law. The plaintiff's case in its very nature rested partly on facts proved by eye-witnesses and partly on a theory built upon such facts, and it is in no position to complain if the jury honestly made use of that discretion, which the court, at plaintiff's instance, told them was vested in them, and so doing rejected the theory advanced by plaintiff.

The first assignment of error is, therefore, in our opinion, untenable.

II. We proceed to examine the plaintiff's second, third and fourth complaints, namely, that the court erred in the following particulars: (2) In admitting the testimony of the witness Potter, as to the meaning of the word explosion; (3) in admitting incompetent testimony intended to contradict plaintiff's witness Lansden; (4) in admitting experts to testify as to facts not within the legitimate range of expert testimony.

The complaints arise on the record in such shape that they must be considered together, in order to reach a satisfactory conclusion touching their merits.

The following occurred in the examination by defendant's counsel of Prof. Potter, one of defendant's experts: "Q. Did you hear Mr. Lansden's testimony as to what occurred at the time he stood and saw the columns fall into the top of this holder? A. I did. Q. Did you hear him describe anything in regard to the blue flame or flash that he said extended over the top of the holder? A. I did. Q. Is there anything in the nature of illuminating gas under the circumstances stated that would produce such an effect?"

Plaintiff's counsel objected to this question as not competent, the witness being called as an expert for defendant, for the purpose of giving the

jury the benefit of his knowledge of physical facts and laws with which he is familiar, and of stating under given circumstances the result of those laws; but that it was not competent to ask such expert witness, in effect, whether he believed what a certain other witness had testified to was true. The objection was sustained by the court, whereupon defendant's counsel asked the following question:

"Q. When this gas issued, as we have supposed, from two apertures in the top of the holder, and the ignition took place, is there anything in the quality of illuminating gas that would cause a blue flame to spread over the whole surface of the holder under the circumstances we have mentioned—a blue flame to extend over the surface one hundred and forty feet in diameter of the holder, with the wind blowing as supposed at the rate of twenty miles an hour from the north?"

To which plaintiff's counsel again objected on the grounds as before, which objection the court overruled, plaintiff's counsel excepting. The witness answered: "A. There is not."

Defendant's counsel asked the following question:

"Q. In speaking of the ignition of gas, the quantities, and under the circumstances mentioned, is there, in the ordinary acceptation of the word, an explosion of gas?"

Objected to for plaintiff as asking the witness to define a word which is not one of obscure or technical meaning, and because it is outside of the province of an expert witness to do so; objection overruled; plaintiff excepting. "A. There is not."

The objection made to the first question and answer given is, that it permitted the witness, under color of an expert opinion, to testify that certain phenomena observed and testified to by witness Lansden could not have occurred, and thereby enabled the defendant to contradict, by expert evidence, the testimony of an eye-witness.

The rule on that subject is thus correctly stated in the brief of plaintiff's counsel :

" The function of experts is to give their opinions or judgments as to conclusions from facts within the range of their specialties, but too recondite to be properly comprehended and weighed by ordinary reasoners. But where scientific men are called as witnesses they cannot give their opinions as to the general merits of the cause, but only their opinions upon the facts proved. If there is no dispute as to the facts, the opinion of such witnesses may be asked directly ; if the facts remain to be found by the jury, they must be hypothetically stated to the expert, but such hypothesis must conform to the evidence in the case ; and it is not competent for an expert to pass on the credibility of evidence submitted to the jury, nor to give an opinion upon assumed facts not in evidence. 1 Whart. Ev., secs. 440, 452 ; 1 Greenl. Ev. sec. 440 ; *Muldowney v. Railroad*, 39 Iowa, 615 ; *Tingley v. Cowgill*, 48 Mo. 291, 298 ; *Hovey v. Chase*, 52 Maine, 304 ; *Thayer v. Davis*, 38 Vt. 163 ; *Sills v. Brown*, 9 Carr & P. 601."

But there is nothing in the ruling of the court which violates this rule. The first question put to the witness was subject perhaps to the objection mentioned and properly ruled out. The objection was inapplicable, however, to the second or modified question for the following reasons: Plaintiff's theory of the innumerable seams and rivet-holes through which the gas percolated forming an explosive mixture was a mere theory, and not testified to by an eye-witness as a fact, but resting for its support on a mechanical deduction from other facts. Defendant's theory of the two large rends or holes torn into the top of the upper cylinder by the two columns which fell first was another theory resting for its support on a mechanical deduction from other facts. The modified question is put to the witness on the hypothesis of the correctness of the second theory. It is true no eye-witness testified to

the rending of these holes by the fall of the columns, but there was evidence that the bright or luminous flash preceded the crash of the falling holder. We fail to see, therefore, in what manner the testimony thus elicited was necessarily a contradiction of facts testified to by Lansden.

The objection made to the second question is, that evidence is not admissible to define or explain words used in a contract unless such words are obscure or ambiguous, or used therein in some special sense, or their meaning is controlled by some special usage. The meaning of this rule is best illustrated, by reference to some of the decided cases. In *Reid v. Ins. Co.*, 58 Mo. 424, it was held that the question, what is the meaning of the phrase, "family physician," was properly ruled out, because the term family physician was one in common and ordinary use, and has no particular definite or technical signification. In *Koering v. Muemming-hoff*, 61 Mo. 405, the court admitted oral evidence as to the meaning of the word "per annum" referring to the interest payable by the terms of a promissory note, and the court on appeal held that the evidence was improperly admitted, because the words had a settled construction, which could not be contradicted by oral evidence. In *Fruin v. Railroad*, 89 Mo. 404, the court held that it was error to permit a witness to testify as to the meaning of "solid rock" in a construction contract.

The meaning of this rule is that persons employing words which are in common use are conclusively presumed, in the absence of fraud, to have used them in the sense assigned to them by such common use. But the rule goes no further. Suppose in the case first put, the question had been, was A. B. the family physician of C. D., or in the case last put, the question had been, was the substance concerning which the controversy arose "solid rock," the question would have been clearly admissible. The question here put was not in what

sense the parties to the contract used the term explosion, nor was it what the ordinary meaning of that term is, but it was in substance, whether certain phenomena observed, or supposed to have taken place, answered phenomena accompanying an explosion, conceding that the word was used in its ordinary sense, and we think plaintiff's objection to it was properly overruled.

If the plaintiff's theory of the accident was correct, there was an explosion of the gas, causing a rending force as the result of sudden expansion, and this force exerted upon the top of the holder was a substantial cause of its destruction. If the defendant's theory of the accident was correct, there was a mere ignition and deflagration of the gas in unconfined space, which would exert no perceptible influence on the integrity of the structure. The question was put to the witness on the basis of the second theory, and we can see no more objection to it than if the facts had been hypothetically stated to the witness, and he in return had defined the result as a deflagration. In fact we find that these two different views were placed before the jury during this protracted trial in so many different phases that it is hardly conceivable how any intelligent body of men could fail to see the bearing of the facts on the different theories, regardless of the shape which the examination in isolated instances assumed.

While McMath, one of the experts called by the defendant, was examined in chief, these questions were put to him in regard to the position of the columns lying in and about the tank after the accident, and he answered them as follows:

"Q. What do you say about those in the tank? A. They were connected together, lying on top of what had been the roof of the holder. The edge of the comparatively uninjured portion of the holder was near a straight line, and very near the position of this column (evidently pointing out the column on a model, or on one of the many photographs used in the trial).

Q. How did that column you last described compare with the edge of the segment that you found on top of the holder? A. *The fall of that column had defined the edge.*"

Counsel for plaintiff objected to this answer as not being a statement of what the witness saw, or an observation of the things as they then were, and asked that it be stricken out.

The judge, in overruling the objection, stated that he deemed it simply a statement of how the columns were lying. To this ruling of the court, the plaintiff excepted, and still excepts.

The objection to the answer is that it was not responsive to the question; that the witness did not state where the sections lay, but volunteered his opinion as to what had caused the straight smooth western edge of the segment.

It must be borne in mind that the court, jury and witnesses, while the examination was going on, had a model of the holder and a large number of photographs taken of the wreck before them; that the witnesses in testifying frequently referred to these exhibits, by pointing out objects as "this or that place," and that in such cases it is impossible for any transcript to present accurately to the mind of the appellate court the exact history of the trial. Hence we are not prepared to say that the interpretation put upon the answer of the witness by the trial court was not a proper one. At the same time it must be clear that the judge's intimation that he permitted the answer to stand because he took it to be the statement of a fact, and not the expression of an opinion, was a sufficient caution to the jury that, as a mere expression of opinion, it was inadmissible. We fail to see how, under the circumstances, the ruling was prejudicial to plaintiff.

The following occurred in the cross-examination of Lansden, the plaintiff's superintendent:

Q. How many times has the holder been pinched, or

got out of plumb, since you have been there? A. Never that I know of, except when the wheels broke at the time we were putting on a new cup.

Q. Didn't you tell Mr. Johnson on that occasion that that holder had been out of plumb and caught several times before? A. No, sir.

Q. Wait a minute,—and that it had been discovered in time to prevent an accident? A. No, sir; I did not; I never heard of such a thing.

Q. You deny that? A. Yes.

When Prof. Johnson, one of defendant's witnesses, being the person referred to, was on the stand, the defendant's counsel claimed the right to contradict Lansden by proving that Lansden had made such statement to him. Plaintiff's counsel objected on the ground that the proposed testimony was immaterial, and that the defendant, having asked the witness Lansden what he said in that conversation, was bound by it. This objection the court overruled, whereupon Johnson testified that Lansden had stated to him that the holder had caught in a similar manner two or three times, but they had always discovered it in time to be able to force more gas in and lift it up again, so that no serious result as far as he knew had ever occurred as a result of it, but that it was not the first time it had caught.

To the ruling of the court in admitting this testimony, the plaintiff excepted, and still excepts.

That when a witness on cross-examination is asked any question on a matter immaterial to the issues on trial, his answer is conclusive and he cannot be contradicted as to such statement with a view of impeaching him is elementary. But was this evidence immaterial? It is not pretended that the fall of the two first columns was the result of an explosion. Those columns, as admitted by all the evidence, fell owing to a certain strain or pressure brought to bear upon them, due mainly to the fact that the cylinder was not in an upright position, but had caught.

The fact that some of the columns had at former times been subjected to a similar strain, which had a tendency to weaken them and thus weaken the structure, was a legitimate inquiry, since one of the defendant's contentions before the jury was that the structure did fall partly owing to its age and defective condition, when it became subject to this extraordinary strain, at the date of the accident.

On that subject Mr. White, one of plaintiff's experts, testifies, when asked as to what significance an event of that kind (a catching and tipping of the cylinder) has as to the character and condition of the gasholder for its purposes and serviceable workings, and says, " None whatever. It is due to some local and temporary cause. The holder frequently escapes without any injury ; *at other times it is badly injured.*" Hence, we cannot hold that the subject on which the witness was contradicted, was immaterial to the issues.

III. We proceed to consider the plaintiff's fifth exception, that the court erred in excluding competent expert testimony offered by the plaintiff.

Norman Keenan, a gas superintendent and engineer of eighteen years experience, being examined on part of plaintiff in rebuttal, stated among other things that he had known of a suspension frame being thrown down, and had seen an instance of it ; he was then asked :

Q. Was it or not accompanied by an inflammation or combustion of illuminating gas,—speaking of your own knowldege ?

To this question defendant objected, which objection the court sustained, and plaintiff excepted.

Plaintiff's counsel asked witness whether he had ever known of a case where a suspension frame was broken down by mechanical means alone, that is, in the absence of any combustion of gas ?

To which question the defendant objected and the court sustained the objection, plaintiff excepting.

Q. Have you known of any instance where a gasholder was destroyed without injury to the suspension frame? A. I did know of one instance.

Q. I will ask the question, in the instance you speak of as having knowledge of the destruction of a gasholder without the suspension frame being torn down,— please state whether or not it was accompanied with the inflammation or combustion of the gas outside, over or above the holder?

To which question defendant's counsel objected; plaintiff's counsel contended that the question was competent, since it did not call for the details of the fact, but the nature of the occurrence which the witness observed. The objection was sustained.

Being further examined in chief, witness stated that he had never heard of but one case of the destruction of the suspension frame of a gasholder, being the case with which he was familiar.

Plaintiff's counsel then asked permission of the court to question the witness further in connection with the occurrence mentioned by him, as to the extent of his observations of the facts attending that case, but the court refused to permit the witness to answer any question as to any details of the case mentioned by him, to which ruling of the court the plaintiff excepted and still excepts.

Wm. H. White, one of plaintiff's experts, a gas engineer of extensive experience, and connected as executive officer and consulting engineer with many gas companies in the country, testified to having seen the wrecks of two gasholders that had been wrecked by explosion, but was not present in either case when the explosion took place. He was permitted to state that he had never known of the case of a destruction of a suspension frame of a gasholder unaccompanied by any ignition or inflammation of illuminating gas. He was not permitted to testify as to the details of his observations in the two cases referred to.

The court, in ruling upon the exclusion of the testimony of these witnesses, gave its reasons for so doing, which are set out in full in plaintiff's brief, and plaintiff's counsel now claim among other things that the reasons thus assigned are not tenable. With the reasons assigned by the court for admitting or excluding testimony, we are not concerned. The only question for our consideration is, was the ruling of the court correct? We may add that this latter witness in the course of his examination, made the following statement:

"Every explosion seems to be individual in its character. There seems to be a fundamental general law as to the causing of the explosion, no general law as to its effects. The break made by one explosion will be an exceedingly small one, by an apparently large body of gas ignited, and in another case it will be an exceedingly destructive one, and when no specially large body of gas has been ignited, *of course I am drawing on what I have seen, and using words to express it.* On the one hand the crown and sides of the holder will be entirely collapsed and driven into a mass into the tank; again the holder will be struck on the side and driven bodily right through these guide-rails, and in other cases the suspension frame will not be injured; again, the suspension frame will be entirely destroyed and the holder itself left in an irreparable (*sic*) condition. The range of phenomena of gas explosions, not confining them to gasholders at all, but as we experience them in our works, in the yard, and in every place, are so peculiar that I cannot make a law governing it."

We have given this extract from the testimony of the witness in full, for the purpose of showing that the court gave to the plaintiff's experts ample opportunity of stating their reasons for their theories or deductions as applicable to the facts of the case at bar, even though such reasons were apparently drawn from a few instances witnessed. To permit such witnesses to

state in detail the facts observed by them in other instances would have been in effect, as counsel for the defendant properly argues, a trial of these other cases, and not of the case at bar. A proceeding of that kind is not to be countenanced in any case, and is certainly wholly inadmissible where, as in this, it stands conceded that each explosion is individual in its character, and that the phenomena of gas explosions are so peculiar that no general rule or law can be founded on them.

IV. No complaint is made of the instructions given, except a qualified complaint of instruction seven given on behalf of the defendant. The propriety of the action of the court, however, in charging the jury, cannot well be determined, unless the instructions given are fully set out.

At the instance of the plaintiff, the court instructed the jury as follows :

"1. That the policy of insurance sued on in this case covers a loss by either fire or explosion, or by both, or by fire resulting from explosion, and if the jury believe from the evidence that the gasholder mentioned in the petition or any part thereof, was destroyed by an accidental fire or explosion, or by both explosion and fire, or by fire resulting from explosion, on the eleventh day of December, 1884, then the verdict should be for the plaintiff, and in such case the jury should assess damages in favor of the plaintiff at one-fortieth part of the actual value of such gasholder, if it was all so destroyed, as above stated, or at one-fortieth of the value of such portion thereof as the jury may find was so destroyed, at the time when such fire or explosion took place.

"2. That if the jury shall find from the evidence that the gasholder in question was destroyed in whole or in part by fire or by explosion, or by both explosion and fire, it makes no difference whether such fire or explosion or both were the result of negligence or carelessness on the part of the plaintiff's agents or servants, either in the original construction or in the subsequent

management and care of said gasholder, this being one of the risks assumed by the defendant in the contract of insurance sued on in this action.

"4. That the jury are not bound to adopt the opinion of any witness who may have testified in this cause touching any matter in controversy therein. It is for the jury to determine, in the light of all the circumstances in proof before them, what weight, if any, they will give to any opinion or theory or conclusion stated by any witness."

The court of its own motion gave the following instruction (modified from an instruction refused as asked by plaintiff):

"5. The court instructs the jury: That if the jury shall believe from the testimony that on December 11, 1884, the gasholder mentioned in the petition was destroyed, and that at the time thereof two of said columns or standards of said gasholder first broke and fell, and that the fall of the upper sections of said two columns upon the dome of the gasholder produced a spark from which resulted a fire or explosion, or both combined, caused the remainder of the structure to fall and thus occasioned a damage other and greater than would have been occasioned merely by the fall of said two columns, then the defendant is liable for one-fortieth (1-40th) of so much of the actual damage to said gasholder as was produced by such fire or explosion, or both combined."

At the defendant's request the court gave the following instructions:

"1. The court instructs the jury that defendant, by its policy of insurance, in evidence in this case, did not agree to insure plaintiff against loss on its gasholder produced by causes other than fire or explosion, or fire resulting from explosion, and if the jury find from the evidence that the damage to said gasholder was produced by the falling of the standards of said gasholder, then you will find for the defendant, unless you find that the fall of some of the standards which produced

some of the damage to the gasholder was the result of fire or explosion or fire and explosion combined.

"2.   The court instructs the jury that the burden of proof rests upon the plaintiff to show by a preponder- ance of proof that the cause of the damage to plaintiff's gasholder was fire or explosion or both fire and explo- sion ; and unless plaintiff has shown that the whole or some part of the damage to its gasholder was so occas- ioned, your verdict should be for the defendant.

"6.   If the jury believe from the evidence that the two south columns of the plaintiff's gasholder at first broke and fell, and that the fall of said two columns produced a shock or strain on other parts of the struct- ure or weakened the same, and so caused the remainder of the holder to fall, and if the jury believe from the evi- dence that all of the damage to said holder was occas- ioned by a fall of said gasholder in manner herein described, then plaintiff cannot recover, even though there may have been an explosion or ignition of gas after the fall of said holder, or coincident therewith.

"7.   If the jury find from the evidence that the plaintiff's gasholder fell, and that the fall was not the result of fire or explosion, or fire and explosion com- bined, then the jury are instructed that upon the falling of said gasholder all insurance by defendant's policy thereupon ceased, and they will find for the defendant, although they may believe that after the fall of said gasholder it may have been further damaged by other causes."

The court refused to give the following instructions asked by the plaintiff :

"3.   That the words used in the policy sued on in this action are to be taken and understood in their plain, ordinary and popular sense, and as generally understood in the community.

"6.   That the gasholder mentioned in the petition and the policy sued on in this action was not a building within the meaning of said policy ; and even if the jury should believe that some part of said gasholder

fell before any explosion or fire occurred on December 11, 1884, and that such fall thereof did not result from a fire or from an explosion, still the jury are instructed that the insurance upon said gasholder under the policy sued on in this case did not cease or determine in consequence of such fall thereof.

"6a. That if the jury shall believe from the evidence that the gasholder mentioned in the petition and policy sued on in this action was not a building within the meaning of that clause of the policy read in evidence which refers to the fall of a building, then that clause in the policy constitutes no defense to the plaintiff's cause of action, even though the jury should believe from the evidence that the gasholder or some part thereof, did fall on December 11, 1884, before any fire or explosion took place.

"6b. That even though the jury should believe from the evidence before them, that the gasholder mentioned in the petition and in the policy sued on in evidence was a building, within the meaning of that clause of said policy which refers to the fall of a building, and should further find that some portion of said gasholder had fallen before any explosion or fire occurred on December 11, 1884, still if the jury should also find that the remainder of said gasholder was damaged or destroyed by or in consequence of a fire or explosion, or both, on said day, then the defendant is liable under the policy herein sued on for its proportion (as stated in the instruction on that subject) of the actual value of such portion of said gasholder, if any, as the jury may find was destroyed by or in consequence of such explosion or fire, or both ; and in such case it is immaterial whether such explosion or fire was caused by the fall of a portion of said gasholder.

"7. That even though the jury should find from the evidence that a portion of said gasholder had fallen before the explosion or fire took place on December 11, 1884, yet though the jury shall further find that the

remainder of said gasholder was destroyed by an explosion or fire, or both, or that the remainder of said gasholder fell as the result of an explosion or fire, or both, and was thereby destroyed, then the defendant is liable for its proportion (as stated in the instruction of the court) of the actual value of so much of said gasholder, if any, as was destroyed by such fire or explosion, or both, and in such case it is immaterial whether such explosion or fire was caused by the fall of a portion of said gasholder.

"8. That no question of negligence or carelessness, either in the construction of the gasholder mentioned in the petition in this case, or in the care bestowed under its management and operation by plaintiff or its agents, is involved or is to be inquired into by the jury in this case. And even though the jury should believe that the plaintiff or its agents were negligent either in the construction or in the management and operation of said gasholder, and that an explosion or fire occurred, as the result of such negligence, on December 11, 1884, those facts would not relieve the defendant from liability for loss caused by such fire or explosion, if the jury should find the defendant liable therefor under the other instructions of the court, this being one of the risks assumed by the defendant under its policy of insurance herein sued on.

"9. That if the jury believe from the evidence that on the eleventh day of December, 1884, a quantity of inflammable gas took fire and was burned, either with or without an explosion thereof, in the immediate neighborhood of the gasholder mentioned in the petition in this case, and that in consequence of the burning or of the explosion of such gas, or of both, according as the jury may find the facts to be, said gasholder was in fact damaged, then the damage so caused to said gasholder was a loss or damage by fire or explosion (as the jury may find the fact to be) within the meaning of the policy sued on, even if the jury should also find that no part of said gasholder was visibly burned, or bore any mark of

fire thereon; and if the jury should find the fact to be as above stated, and should find the defendant liable under the remaining instructions given them, the plaintiff is in that case entitled to recover from the defendant in this action, its proportion, being one-fortieth of the damage sustained by plaintiff in consequence of the facts so found as above stated.

"5. That if the jury shall believe from the testimony that on December 11, 1884, the gasholder mentioned in the petition was destroyed, and at the time thereof two of said columns or standards of said gasholder had first broke and fell, and that the fall of the upper sections of said two columns upon the dome of the gasholder produced a fire or explosion, or both, and that such fire or explosion, or both combined, caused the remainder of the standards to fall and this occasioned a damage other than and greater than would have been occasioned from the different fall of said two columns—then the defendant is liable for one-fortieth (1-40th) of so much of the actual damage to said gasholder as was produced by such fire or explosion, or both combined."

In lieu of the last instruction marked 5, the court gave the modified instruction marked 5 as above stated, of its own motion.

The petition claims that the property was totally destroyed by explosion and fire, which explosion and fire did not arise from any of the excepted causes mentioned in said policy of insurance. The answer avers that the only destruction or injury happening to said gasholder was caused by the falling of the standards and of the other parts of said holder, and not by fire or explosion as in said petition pretended. The answer also sets up as a defense the clause in the policy which provides for a determination of the policy in case any building should fall. This, however, under the view hereinafter taken, we deem to be immaterial.

Under these pleadings it was incumbent upon the plaintiff to establish that the cause of the loss was either

fire or explosion, or both, and all the defendant had to make out, that it was neither, because if the loss was caused by neither fire nor explosion, it was immaterial what other causes brought it about.

This being the unquestioned law, and the facts in evidence being as stated in former parts of this opinion, we must conclude that the instructions given state the issues raised by the pleadings and evidence, and the applicatory law, fairly and fully to the jury.

Instruction number three was properly refused.   It was not for the jury but for the court to construe the policy and all of its terms.    There is nothing ambiguous in the word "explosion," nor was any evidence given by plaintiff to extend, or by the defendant to contract, the meaning of the term.    Webster defines it as a *"sudden bursting with noise,"* and all the witnesses who testified assumed that it meant a rending force caused by the instantaneous and violent expansion of the mixture of gas and atmospheric air.    The testimony of Prof. Potter is not to the contrary as assumed by plaintiff's counsel.    All that that witness states, in substance, on that subject is, that if there was a mere deflagration of the gas it was not an explosion.    None of the witnesses maintain that these two are not essentially different.    The cases cited by the learned counsel for plaintiff, that it is the duty of the court to instruct on every phase of the issues if so requested to do, are wholly inapplicable here.

Instruction number six tells the jury that the gas-holder mentioned in the petition was not a building within the terms of the policy, and instruction 6a leaves it to the jury to determine upon the facts shown whether it was a building or not. The second instruction was offered by the plaintiff after the first was refused.   Both these instructions seem to have been offered in view of the clause of the policy, that if a building should fall except as a result of a fire, all insurance on the same by the company should immediately cease and determine.

These instructions were properly refused. Excluding from consideration the fact that instruction 6a was faulty for the same reason as instruction three, in that it submitted to the jury a question of interpretation, namely, whether the structure insured was a building within the meaning of that clause of the policy which refers to the fall of a building, and yet it must be clear that, under the evidence, the instruction could have no other tendency than to mislead the jury.

There was no evidence that after the entire gasholder fell any injury was caused to it by either fire or explosion or both. The cylinder and its frames were constructed entirely of iron, and, as shown above, the heat was not sufficient even to scorch the outward paint on the cylinder. The gas in the holder was not insured, hence there was no evidence on which the plaintiff could base a recovery for any damages caused by either explosion or fire, or both combined, regardless of the fact whether the policy still attached to the wreck. Fire and explosion were the only dangers insured against.

On the other hand, we cannot see how, under the authority of *Nave v. Ins. Co.*, 37 Mo. 431, the plaintiff was entitled to these instructions regardless of the clause in the policy touching the fall of the building. The subject insured was one iron telescopic gasholder, and even if there had been any evidence of loss by fire after it fell and became a total wreck, yet, as was properly said in the *Nave case*, "the subject insured had ceased to be such, and became a mere congeries of materials before the fire occurred, and by reason of a cause not insured against in the policy." If the defendant's theory is the correct one, it is not the burning but the escape of the gas that caused the injury ; nor does the plaintiff claim that the mere burning of the gas, unaccompanied by explosion, inflicted any material injury on the holder. The jury had been sufficiently instructed *aliunde*, that the falling of parts of the standards or columns, prior to the

explosion or fire, did not relieve the defendant from liability for damages arising to the structure thereafter, and before it became a wreck, by either explosion or fire.

The same observations will apply to the refusal of instructions 6b, seven and eight, nor is it now urged that the refusal of the two last was prejudicial to plaintiff.

The refusal of instruction nine is mainly complained of, because it is the only one which contains the statement that it was not essential to a recovery by plaintiff that it should appear that any part of the gasholder was *visibly* burned or bore any marks of fire. The plaintiff's first and fifth instructions, as modified by the court, sufficiently advised the jury for what damages sustained by the plaintiff it was entitled to indemnity under the contract, hence another instruction on that subject was unnecessary. If the instruction was asked for the purpose of guarding against deductions which might be drawn by the jury from evidence elicited by the defendant, to the effect that the gasholder was not visibly burned, and hence one element of evidence of an explosion, to-wit, intense heat, was wanting, then it was properly refused as argumentative. *Leeser v. Boekhoff, ante,* p. 223.

We have thus gone, in detail, over every question raised by the appellant on this voluminous record, covering over six hundred and fifty pages. In view of the amount involved in this controversy, and others depending upon it, and in deference to the earnestness and learning with which many of the points have been pressed upon our attention by plaintiff's counsel, we have given to many of the points thus presented a more critical examination than they seem to demand. We have reached the conclusion that no error has intervened in the trial of the cause which would warrant us to disturb the judgment rendered.

All the judges concurring, the judgment is affirmed.